May it please the Court. I'm Robert Jobe, and I'm appearing today on behalf of the petitioner Kapoor Singh. In this case, the Board of Immigration Appeals accepted that Mr. Singh is a victim of past persecution on account of a protected ground, and that he's therefore entitled to a presumption of future persecution. In order to rebut that presumption, the government must present evidence that, on an individualized basis, rebuts the specific grounds for Mr. Singh's well-founded fear of persecution. Other than making a general reference to certain documents in the record describing current country conditions, however, the B.I. didn't even attempt to provide any individualized analysis. The immigration judge offered a few reasons suggesting that the government had met its burden, but they all relate to generalized country conditions. There's no individualized analysis there either. The immigration judge focused on the fact that the Sikh militant movement is no longer active in Punjab. This is on page 84 of the administrative record. But if you look at page 727 of the administrative record, it makes clear, this is a State Department report, that makes clear that it says the Indian Human Rights Commission held four days of hearing in Punjab in April of 1994 about the unrest in Punjab, and found at that time, in 1994, that the Punjabi militancy had ended. The commission concluded in April 1994 that such militancy no longer served as an explanation for police excesses. Asia Watch and Amnesty Commission made the same conclusion in several reports issued in 1994 and 1995. Now, this is important because the petitioner in this case was arrested and tortured in November of 1996. So the mere fact that the militancy had ended, as the immigration judge points out, that certainly doesn't suggest that this particular individual no longer has a well-founded fear, because he was arrested and tortured even after the end of the militancy. The immigration judge also suggested that there had been some accommodation, he says, reached between the Sikh community and the Congress party. Well, that may be true, but that doesn't include Akali Dalman, the party to which this individual belonged. That party persists in calling for an independent Sikh state. There's no accommodation between that separatist party and the Congress party. And this is important, obviously, because there's evidence in the record that the party to which this petitioner belonged and actively supported continues to face persecution at the hands of the Indian government. Now, the Indian government has never been a part of this effort. None of this evidence, however, was grappled with by the board or the immigration judge. For example, at page 280 of the administrative record, the United States State Department makes clear that the leader of Mr. Singh's party, Simranjit Singh Man, was arrested under Tata for, quote, making an inflammatory speech way back in 1991. On pages 334 and 336 of the record, the Indian government has never been a part of this effort. There are news articles indicating that the government of India had launched, quote, a major crackdown against Mr. Singh's political party. So clearly, the accommodation that the immigration judge is describing, it doesn't affect this particular petitioner. The most important evidence of that is probably set forth in the record with regard to whether Mr. the Indian authorities are still looking for Mr. Singh. Now, if you look at the board's decision, they drop a section of the record that says that the affidavit from Mr. Singh's wife doesn't suggest that the Indian police are still raiding the house, and the board points to certain testimonies suggesting the police have stopped coming and asking for bribes. Well, if you look at that section of the record, and this is on pages 229 to 231, it's true that Mr. Singh testified that the police have stopped looking for Mr. Singh, and that the police are still coming. Actually, he said the opposite. What he said on page 229 is that police come to our house and ask my wife as to where is Kapoor Singh. Much of this particular exchange is indecipherable in the transcript, but the immigration judge summarizes it on page 331 of the record, where he says that the police are still coming, but they're not asking for bribes. Well, if the police are still coming to this individual's house, well, that seems to be the most important fact with regard to whether he has a continuing fear of persecution, but neither the immigration judge nor the board of immigration appeals ever grappled with it. They didn't engage in the sort of individualized analysis that they were required to do. Now, the government relies on certain evidence of country conditions here, suggesting that, as a general matter, Sikhs are not persecuted. But our claim here is not that Sikhs are persecuted. Our claim is that this particular individual, as an active member of a particular political party that is continuing to call for the creation of an independent State, is at risk. Kagan. Counsel? Bursch. Yes, Your Honor. Kagan. If we agree with you, the I.J. and the board didn't grapple with his withholding or his cap claim. Bursch. Right. Kagan. Is that correct? Bursch. That's correct. Kagan. And also, they didn't grapple with whether he could relocate. Now, should we be sending back for further development on all of these points? Bursch. Well, I think normally what the court would do there is send it back and say that there was never the board never conducted an individualized analysis. On the countrywide persecution issue, the board and the I.J. both just simply asserted a conclusion, but they didn't cite to any evidence, and there's absolutely no discussion at all. So there was really nothing for us to try to rebut there. Kagan. But they did supposedly deal with that. Bursch. They did. So the issue was presented. They made a conclusion. The conclusion was wholly unsupported by substantial evidence. Kagan. But they didn't grapple with these other items that I mentioned, whether he should get withholding or cap, or whether he could relocate. So we'd have a Ventura remand, I assume, on those? Bursch. Yeah, I think so. On the issue of countrywide persecution, you know, I think you could go either of two ways on that, because both the immigration judge and the board did assert that the petition, that the government had met its burden of showing that he could relocate. So that issue was dealt with explicitly by both the immigration judge and the board. The problem in both cases is that neither one actually cited to any evidence at all, and neither one provided any analysis to support its bare conclusion. Kagan. But do they get a second bite on that issue? Bursch. I guess our threshold position would be no. I mean, the threshold position before the Court should be, is the board's conclusion on that point supported by substantial evidence? If not, we would argue for reversal. Our secondary position would be that, at a minimum, they have to give an individualized analysis, they have to give a rational explanation for their conclusion, and they haven't done that. So at a minimum, obviously, remand would be required. I'll reserve the balance of my time. Okay. We'll hear from the Attorney General. May it please the Court. My name is Andrew O'Malley, and I represent the Attorney General of the United States. In this case, an alien who has afforded a full merits hearing and availed himself of the opportunity to appeal to the Board of Immigration Appeals challenges the agency's final order denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. This is a case where there's no challenge to the credibility. Is that correct? That's correct, Your Honor. The board found that that Petitioner was credible. This Court should deny the petition for review because substantial evidence in the Petitioner's determination is that by demonstrating changed country conditions in India, the government rebutted the presumption that Petitioner will suffer future persecution, and Petitioner could reasonably avoid future harm by relocating within India. Now, did they deal with his individualized situation? They did, Your Honor. In fact, the immigration judge conducted an individualized analysis, did not simply rely on generalized country conditions. It was analysis of how changes in the Punjab region specifically related to the situation between Sikh political organizations and those who advocated for an independent state of Khalistan, such as Petitioner, and the central government of India and the Congress High Party. Where do we find that in the record? I believe it's page 85 of the record, Your Honor. The immigration judge 84, excuse me, Your Honor. The immigration judge specifically cites the fact that the record evidence demonstrates that the Sikh militant movement is no longer active in the Punjab region, that it is relocated or is active to an extent but operates out of Pakistan. Well, I read that. But the fact that they are no longer active doesn't mean that a militant who wants the separate state wouldn't be captured and persecuted if they could get a hold of them. The fact that the movement has quit doesn't mean that the individual is safe. Yes, Your Honor. But combined with the evidence that the immigration judge recognized that there are still individuals in the Punjab region who advocate for Khalistan, those individuals benefit from a constitution that permits peaceful demonstration and that specifically suggests that the government is permitting those demonstrations, that most of the problems in the region. In the country conditions, Your Honor, the that is located on page 286 to 287, which is the United States country report, and page 247, which is the country report from the United Kingdom. What's that last slide again? It's 247, Your Honor. 247. And that's the United Kingdom country report. And, indeed, these reports do indicate that there has been a change in country conditions that support the rebuttal of the presumption of future persecution. It notes that there was an elevation of a Sikh to the prime minister's post. Yes, but he was not one who wanted Khalistan. That's correct, Your Honor. However, the analysts in the report, specifically the U.K. report, suggest that this elevation of a Sikh to the prime minister's position has helped bridge the gap between the Sikh community and the political organizations in the country. That's absolutely true, but I don't think it speaks to what you do with someone who was a real militant, wanted a separate state. Correct, Your Honor. And, again, the reports indicate that the militants are no longer active and that individuals who still seek Khalistan, who still petition for Khalistan, benefit from the fact that peaceful demonstration is permitted. And to get specifically to Petitioner's claim that he was persecuted by the police, the country reports, specifically the U.K. country reports, indicate that investigations of human rights abuses have sent a strong signal that the climate of impunity for the police has ended, or is ending, and that the government is trying to rein in the police in Punjab specifically. And, indeed, even if Petitioner were to suffer persecution or did have a found fear of persecution in the Punjab region, it is reasonable to expect him to relocate within India. Now, in respect to relocation, the government is required to look to the individual's social situation, its family, where there are jobs. None of that was done in this case. Your Honor, the immigration judge and the board both said under all circumstances it would be reasonable to expect this petitioner to relocate. But what does reasonable mean? I think the cases tell us that we have to get pretty individualized about the individual. And I think they haven't done that in this case. Well, Your Honor, notably, the country reports do give a pretty strong indication that it is reasonable for Petitioner to relocate. The record indicates that the Indian constitution guarantees the right to move freely throughout the territory, that Punjabi Sikhs in particular are able to relocate to another part of India, and there are Sikh communities all over India. It states that Sikh communities are generally urban and prosperous, and that a Punjabi Sikh in particular would have no more problem finding educational opportunities for their children, finding employment opportunities than any other individual who relocates within India. Specifically, again, the Petitioner's claim that he was persecuted by the police, the country reports, and specifically the U.K. country reports state that there are no checks on newcomers to any part of India arriving from another part of India, and that the local police have neither the language abilities nor the resources to conduct background checks. And finally, on that point, it states that a high-profile person might not be able to move elsewhere, but that a low-profile person would have no problem doing so. And Petitioner himself testified that he does not consider himself to be a high-profile person. Did the immigration judge and the board give any consideration to his humanitarian claim? No, Your Honor. They did not. And indeed, that claim was not fairly exhausted before the board. It appears the Petitioner cited the matter of Chen in their appeal to the board, but they did so as a boilerplate in the section relating to a well-founded fear of future persecution. The board dealt with everything raised by Petitioner and their Petitioner in the brief to the board, including the credibility determination, but did not deal with the humanitarian claim because it was not raised and there was no effort to actually argue that Petitioner was eligible for such relief. Again, it appears only in the section relating to a well-founded fear of persecution, with no effort whatsoever at development of that issue. And, Your Honor, you had mentioned earlier the issue of withholding of removal and protection under the Convention Against Torture, and whether the agency dealt with those issues as well. And, indeed, they did. The board specifically affirmed the immigration judge's decision, including the denial of Petitioner's applications for withholding of removal and protection under the Convention Against Torture. That's on page 2 of the record. It's the first full paragraph of the board's decision. If you look at page 18 of the record. Any discussion of it? To say going through, I didn't find anything other than the conclusion that explained, and I understand how the logic flows, but ordinarily we get a recitation as to why if you lose on one, the other dominoes fall. And I didn't find anything that provided that here. Well, again, Your Honor, they affirmed the immigration judge's decision. And on page 85 of the record, which is the immigration judge's decision, the immigration judge specifically states that the changed country conditions in India were sufficient to indicate that there was no longer a reasonable possibility that Petitioner would be persecuted, much less a clear probability or real likelihood that he would be persecuted, that's withholding of removal, and or tortured in India. And that's the Convention Against Torture. If we were to disagree with you on asylum, I think then we would not find that there had been adequate consideration of the other two aspects. Yes, Your Honor. It kind of turns on that. In terms of whether there's consideration of withholding of removal in the Convention Against Torture. And again, Your Honor, the immigration judge specifically handled the situation of withholding the protection of the convention based on the evidence of changed country conditions, and that's explicitly in the record. If there are no more further questions, Your Honor, I would just like to reiterate that the Court should deny the petition for review because substantial evidence supports the agency's conclusions. Thank you very much. Thank you, Mr. Chau. I'm somewhat amused by the government's presentation because, although I found it very good, none of it, none of it, except for two points, are actually set forth in the board's decision or the immigration judge's decision. And those two points relate to the elevation of Manmohan Singh as Prime Minister and the point I addressed before about the end of Sikh militancy. The documents that the immigration judge relied on do say, well, the immigration judge never cites these, but the government's relying on them. The documents that the government's relying on here before the Court do say that rank-and-file members of groups that were once targeted are now safe, but it goes on to say, and this is at page 246, that there are exceptions, such as people with the local history of abuse at the hands of the police and militants together with their close relatives and supporters who continue to be followed as potential seeds for further rebellion. The documents that the government's relying on specifically describe the exception that pertains to this case. That same document, the U.K. Human Rights Report here, says that for Indian asylum seekers who were already wanted by the Indian authorities for earlier offenses, such as alleged involvement with a terrorist group, arrival in India would certainly lead to prosecution wherever the Indian citizen landed or went afterwards. Now, this is important because it's undisputed that the Indian police have repeatedly accused this petitioner of, quote, harboring terrorists. That's at pages 164, 188, and 189. And it's also undisputed that individuals, once they're taken into custody, are routinely tortured by the Indian government. After all, this individual was tortured on three separate occasions. Now, these are not facts that can be simply ignored. If the immigration judge is going to engage in a proper analysis here, he can't just cherry pick and point to a few points about general changes in country conditions. He has to link those general changes to the specific applicant before him. None of that happened here. And there's very strong evidence that this particular applicant remains at risk. The agency has to deal with that. It's not for the court of appeals to deal with that when oil comes in and makes these arguments to the court of appeals. The immigration judge and the board of immigration have to deal with it. And then you have to review their reasoning. It's not appropriate for the board and the I.J. to simply point to general changes in country conditions and then for oil to come in and make its case. We thank you. We thank both counsel for the arguments. The case is submitted.
judges: Anello, Fletcher B. , Clifton